## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| ADAM HEASTER, Individually and For Others Similarly Situated, | **Case No.** _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| CHEVRON U.S.A., INC, | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |
| Defendant. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Adam Heaster (Heaster) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Chevron U.S.A., Inc. (Chevron) under the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA). *See* 29 U.S.C. § 201 *et seq.*

2.    Heaster worked for Chevron as a Landman.

3.    Heaster and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4.    But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5.    Instead of receiving overtime as required by the FLSA and the PMWA, Chevron classified Heaster and the Putative Class Members as independent contractors, and these workers received a flat amount for each day worked (a "day rate") without overtime compensation.

6.    Heaster or the Putative Class Members never received a guaranteed salary.

7.    This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION & VENUE**

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      This Court also has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

11.     Heaster worked for Chevron in this District and Division.

12.     Specifically, Heaster worked for Chevron in and around Greene and Fayette, Pennsylvania. Indeed, Heaster regularly worked overtime for Chevron in and around Greene and Fayette, Pennsylvania. Despite regularly working over 40 hours, Chevron paid him a day rate with no overtime for the work he did for Chevron in and around Greene and Fayette, Pennsylvania.

13.     Chevron conducts substantial business operations in this District and Division.

14.     Specifically, Chevron hires Landmen, like Heaster, to perform services in and around Greene and Fayette, Pennsylvania.

**PARTIES**

15.     Heaster worked for Chevron as a Landman from approximately November 2018 until October 2019.

16.     Throughout his employment with Chevron, Heaster was paid a day rate with no overtime compensation and was classified as an independent contractor by Chevron.

17.     In fact, Heaster's relationship with Chevron was an employer/employee relationship.

18.     Heaster's written consent is attached as Exhibit A.

19.     Heaster brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Chevron's day rate system.

20.     Each of these workers received a flat amount for each day worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

21.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Landmen employed by, or working on behalf of Chevron, who were paid a day rate with no overtime at any time during the past 3 years** (FLSA Class Members).

22.     Heaster also seeks class certification of such a class under Fed. R. Civ. P. 23 under the PMWA, as follows:

> **All Landmen employed by, or working on behalf of Chevron, who were paid a day rate with no overtime at any time during the past 3 years in Pennsylvania.** (Pennsylvania Class Members).

23.     The FLSA and Pennsylvania Class Members are referred to collectively as the Putative Class Members.

24.     The Putative Class Members are easily ascertainable from Chevron's business and personnel records.

25.     Defendant Chevron is a California corporation that may be served with process by serving its registered agent: **The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801**.

### COVERAGE UNDER THE FLSA

26.     At all relevant times, Chevron has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

27.     At all relevant times, Chevron has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, Chevron has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Chevron has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

29.     In each of the last 3 years, Chevron has had annual gross volume of sales made or business done of at least $1,000,000.

30.     At all relevant times, Heaster and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

31.     Chevron treated Heaster and the Putative Class Members as employees and uniformly dictated the pay practices applied to Heaster and the Putative Class Members.

32.     Chevron's misclassification of Heaster and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA or the PMWA.

33.     Chevron's uniform day rate scheme, depriving its employees of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTUAL ALLEGATIONS

34.     Chevron is one of the leading providers of energy services, offering fuel, chemical, natural gas, lubricant, and other related services.

35.     To complete its business objectives, Chevron hires personnel, such as Heaster, to perform landmen services.

36.     Chevron considers Heaster and the Putative Class Members to be contractors.

37.     But Chevron does not hire these workers on a project-by-project basis.

38.     Rather, Chevron hires and treats these workers just like regular, even if sometimes short term, employees.

39.     Many of these individuals worked for Chevron on a day rate basis (without overtime pay).

40.     These workers make up the proposed Putative Class.

41.     For example, Heaster worked for Chevron as a Landman from approximately November 2018 until October 2019 in Pennsylvania.

42.     As a Landman, Heaster's primary job duties include making phone calls to land and mineral rights owners, setting up appointments with these owners, visiting the land to facilitate contracts and lease agreements, and submitting paperwork.

43.     Heaster did not have any supervisory duties.

44.     Heaster did not hire for fire employees.

45.     Heaster did not exercise discretion and judgment as to matters of significant.

46.     Heaster was a blue-collar worker.

47.     Throughout his employment with Chevron, he was classified as an independent contractor and paid on a day rate basis.

48.     Heaster and the Putative Class Members work for Chevron under its day rate pay scheme.

49.     Heaster and the Putative Class Members do not receive a salary.

50.     If Heaster and the Putative Class Members did not work, they did not get paid.

51.     Heaster and the Putative Class Members receive a day rate.

52.     Heaster and the Putative Class Members do not receive overtime pay.

53.     This is despite the fact that Heaster and the Putative Class Members often work more than 10 hours a day, for as many as 7 days a week, for weeks at a time.

54.     Although Heaster typically worked up to 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

55.     Heaster and the Putative Class Members received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

56.     Without the job performed by Heaster and the Putative Class Members, Chevron would not be able to complete its business objectives.

57.     Heaster and the Putative Class Members relied on Chevron for work and compensation.

58.     Heaster and the Putative Class Members worked in accordance with the schedule set by Chevron and/or its clients.

59.     Heaster and the Putative Class Members cannot subcontract out the work they are assigned by Chevron.

60.     Heaster and the Putative Class Members must follow Chevron and/or its clients' policies and procedures.

61.     Heaster and the Putative Class Members' work must adhere to the quality standards put in place by Chevron and/or its clients.

62.     Heaster and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

63.     Heaster and the Putative Class Members did not market their services while employed by Chevron.

64.     Heaster and the Putative Class Members worked exclusively for Chevron during the relevant period.

65.     Heaster and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

66.     Chevron and/or its clients set Heaster and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Chevron.

67.     At all relevant times, Chevron and/or its clients maintained control, oversight, and direction of Heaster and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

68.     Heaster's work schedule is typical of the Putative Class Members.

69.     Chevron controls Heaster and the Putative Class Members' pay.

70.     Likewise, Chevron and/or its clients control Heaster and the Putative Class Members' work.

71.     Heaster and the Putative Class Members' work must adhere to the quality standards put in place by Chevron and/or its clients.

72.     Heaster and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

73.     Chevron knows Heaster and the Putative Class Members work for 10 or more hours a day, for as many as 7 days a week.

74.     Chevron's records reflect the fact that Heaster and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

75.     Heaster and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

76.     Instead, Heaster and the Putative Class Members are paid on a day rate basis.

77.     Chevron and/or its clients set these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directive, and its (or its clients') policies and procedures.

78.     Chevron controls Heaster and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

79.     While working for Chevron, Chevron controlled all the significant or meaningful aspects of the job duties Heaster and the Putative Class Members perform.

80.     Chevron exercises control over the hours and locations Heaster and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

81.     Even though Heaster and the Putative Class Members work away from Chevron's offices without the constant presence of Chevron supervisors, Chevron still controls significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

82.     Heaster and the Putative Class Members do not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

83.     Chevron (and/or its clients) make these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Heaster and the Putative Class Members work.

84.     Heaster and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

85.     The daily and weekly activities of Heaster and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Chevron.

86.     Chevron prohibits Heaster and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Heaster and the Putative Class Members to follow Chevron's (or its clients') policies, procedures, and directives.

87.     All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

88.     All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

89.     All of the Putative Class Members work in excess of 40 hours each week.

90.     Chevron uniformly denies Heaster and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

91.     Heaster and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

92.     Chevron's day rate policy violates the FLSA because it deprives Heaster and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

93.     Chevron knew Heaster and the Putative Class Members worked more than 40 hours in a week.

94.     Chevron knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA or the PMWA's overtime provisions.

95.     Nonetheless, Heaster and the Putative Class Members were not paid overtime.

96.     Chevron knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and the PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

97.     Heaster brings this claim as a class and collective action under the FLSA and the PMWA.

98.     The Putative Class Members were victimized by Chevron's pattern, practice, and/or policy which is in willful violation of the FLSA and the PMWA.

99.     Other Putative Class Members worked with Heaster and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

100.     Based on his experiences with Chevron, Heaster is aware that Chevron's illegal practices were imposed on the Putative Class Members.

101.     The Putative Class Members are similarly situated in all relevant respects.

102.     The Putative Class Members are blue-collar workers.

103.   Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

104.   The illegal day rate policy that Chevron imposes on Heaster is likewise imposed on all Putative Class Members.

105.   Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the PMWA.

106.   The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

107.   The overtime owed to Heaster and the Putative Class Members will be calculated using the same records and using the same formula.

108.   Heaster's experiences are therefore typical of the experiences of the Putative Class Members.

109.   The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

110.   Heaster has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

111.   Like each Putative Class Member, Heaster has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

112.   A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

113.   Absent a class and collective action, many Putative Class Members will not obtain redress of their injuries and Chevron will reap the unjust benefits of violating the FLSA and the PMWA.

114.   Further, even if some of the Putative Class Members could afford individual litigation against Chevron, it would be unduly burdensome to the judicial system.

115.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

116.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

117.    Among the common questions of law and fact are:

  a.  Whether Chevron employed the Putative Class Members within the meaning of the FLSA and the PMWA;

  b.  Whether Chevron's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

  c.  Whether Chevron's violation of the FLSA was willful; and

  d.  Whether Chevron's illegal pay practice applied to the Putative Class Members.

118.    Heaster and the Putative Class Members sustained damages arising out of Chevron's illegal and uniform employment policy.

119.    Heaster knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

120.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Chevron's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

121.    Chevron is liable under the FLSA and the PMWA for failing to pay overtime to Heaster and the Putative Class Members.

122.    Consistent with Chevron's illegal day rate policy, Heaster and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

123.    As part of their regular business practices, Chevron intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Heaster and the Putative Class Members.

124.    Chevron's illegal day rate policy deprived Heaster and the Putative Class Members of the premium overtime wages they are owed under federal law.

125.    Chevron is aware, or should have been aware, that the FLSA and the PMWA required it to pay Heaster and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

126.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA and the PMWA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

127.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

128.    Those similarly situated employees are known to Chevron, are readily identifiable, and can be located through Chevron's records.

CAUSE OF ACTION
VIOLATION OF THE FLSA

129.    Heaster realleges and incorporates by reference all allegations in preceding paragraphs.

130.    Heaster brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

131.    Chevron violated, and is violating, the FLSA by failing to pay Heaster and the Putative Class Members overtime.

132.    Chevron misclassified the Plaintiff and Putative Class Members for purposes of the FLSA overtime requirements.

133.    Chevron cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the administrative exemption.

134.   Chevron cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the executive exemption.

135.   Chevron cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the professional exemption.

136.   Chevron cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the highly compensated exemption.

137.   Chevron misclassified the Plaintiff and Putative Class Members as contractors.

138.   Chevron failed to guarantee the Plaintiff and Putative Class Members a salary.

139.   Chevron failed to pay the Plaintiff and Putative Class Members overtime.

140.   Chevron paid the Plaintiff and Putative Class Members a day rate.

141.   Chevron knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

142.   Chevron's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

143.   Accordingly, Heaster and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## PMWA VIOLATIONS

144.   Heaster brings his claim under the PMWA as a Rule 23 class action.

145.   The conduct alleged violates the PMWA.

146.   At all relevant times, Chevron was subject to the requirements of the PMWA.

147.   At all relevant times, Chevron employed Heaster and the Pennsylvania Class Members as "employees" within the meaning of the PMWA.

148.    The PMWA requires employers like Chevron to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

149.    Heaster and the Pennsylvania Class Members are entitled to overtime under the PMWA.

150.    Chevron has and has had a policy and practice of misclassifying Heaster and the Pennsylvania Class Members as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 in a workweek.

151.    Heaster and the Pennsylvania Class Members seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

152.    Heaster and the Pennsylvania Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Chevron, as provided by the PMWA.

## JURY DEMAND

153.    Heaster demands a trial by jury.

## PRAYER

WHEREFORE, Heaster, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a.    An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.    An Order designating the Pennsylvania Class as class action pursuant to Fed. R. Civ. P. 23;

c.    For an Order appointing Heaster and his counsel as Class Counsel to represent the interests of the FLSA and Pennsylvania Classes;

d.   A judgment against Chevron awarding Heaster and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

e.   Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA and the PMWA;

f.   An order awarding attorneys' fees, costs, and expenses;

g.   Pre- and post-judgment interest at the highest applicable rates; and

h.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
   **Michael A. Josephson**
   PA Bar No. 308410
   **Andrew W. Dunlap**
   TX Bar No. 24078444
   **Taylor A. Jones**
   TX Bar No. 24107823
   (*pro hac vice application forthcoming*)
   JOSEPHSON DUNLAP
   11 Greenway Plaza, Suite 3050
   Houston, Texas 77046
   713-352-1100 – Telephone
   713-352-3300 – Facsimile
   mjosephson@mybackwages.com
   adunlap@mybackwages.com
   tjones@mybackwages.com

   **AND**

   **Richard J. (Rex) Burch**
   TX Bar No. 24001807
   BRUCKNER BURCH PLLC
   8 Greenway Plaza, Suite 1500
   Houston, Texas 77046
   713-877-8788 – Telephone
   713-877-8065 – Facsimile
   rburch@brucknerburch.com

   **AND**

**Joshua P. Geist**
PA ID No. 85745
**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**